UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARSHIA MEAUX,<br><br>        Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>        Defendant. | CASE NO.   C05-5580RBL<br><br>REPORT AND RECOMMENDATION<br><br>Noted for June 2, 2006 |

Plaintiff, Marshia Meaux, has brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's review.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff currently is fifty-six years old.[1] Tr. 37. She has an eighth grade education and no past

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

relevant work experience. Tr. 18, 30, 351.

On May 11, 2000, plaintiff filed an application for SSI benefits,[2] alleging disability as of January 1, 1988, due to arthritis in her fingers and pain in her lower back and hip. Tr. 338-39, 344. Her application was denied initially and on reconsideration. Tr. 304-05, 307, 315. A hearing was held before an administrative law judge ("ALJ") on July 17, 2003, at which plaintiff, represented by counsel, appeared and testified, as did two medical experts and a vocational expert. Tr. 952-999.[3]

On November 5, 2003, the ALJ issued a decision, determining plaintiff to be not disabled, because she was able to make a vocational adjustment to other jobs existing in significant numbers in the national economy. Tr. 802-13. On June 2, 2004, the Appeals Council granted plaintiff's request for review, and remanded the matter to the ALJ to do the following: (a) give further consideration to plaintiff's maximum residual functional capacity; (b) evaluate the statements of plaintiff's daughter; (c) evaluate plaintiff's obesity singly and in combination with her other impairments; and (d) obtain supplemental evidence from a vocational expert to clarify the effect of plaintiff's limitations on her occupational base. Tr. 815-17.

A second hearing was held before the same ALJ on January 3, 2005, at which plaintiff, represented by counsel, appeared and testified, as did two different medical experts and a lay witness. Tr. 1000-1044. A vocational expert also appeared at the hearing, but did not testify. Id. On April 27, 2005, the ALJ issued a decision, again determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since May 11, 2000;

(2) at step two, plaintiff had "severe" impairments consisting of degenerative joint disease in multiple joints, dysthymia, a personality disorder, and malingering;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform less than the full range of light work, and had no past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant

---

[2] Plaintiff apparently also had filed a number of prior applications for disability insurance and SSI benefits between 1992 and 1995, each of which were denied by the Commissioner. Tr. 17. Plaintiff has not sought to re-open those applications in this case.

[3] It appears that the copy of the transcript of this hearing contained in the record is incomplete, as page 999 ends in the middle of the vocational expert's testimony. Although the Court was unable to procure a full copy of that transcript, as explained below, such is not necessary in order to resolve the issues presented in this case.

REPORT AND RECOMMENDATION
Page - 2

numbers in the national economy.

Tr. 18, 30-31. Plaintiff's request for review was denied by the Appeals Council on August 2, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 10; 20 C.F.R. § 416.1481.

On September 6, 2005, plaintiff filed a complaint with this Court seeking review of the ALJ's decision. (Dkt. #1-#4). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, for the following reasons:

(a) the ALJ erred in evaluating the medical evidence in the record;

(b) the ALJ erred in assessing plaintiff's residual functional capacity; and

(c) the ALJ erred in failing to obtain the testimony of a vocational expert at the second hearing.

Plaintiff further argues in her reply brief that pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.01, she should have been found disabled as of her fifty-fifth birthday. The undersigned agrees that the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends this matter be remanded to the Commissioner for further administrative proceedings. While plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Erred in Evaluating the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the

ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.  <u>Dr. Asher</u>

At the second hearing, Dr. Kenneth Asher testified that he felt the documentation of plaintiff's malingering qualified many of her reports "throughout the record." Tr. 1031.  Dr. Asher further testified that "given her reporting," it appeared plaintiff would receive "marked ratings" regarding her activities of daily living, social functioning, and concentration, persistence and pace. Tr. 1032-33.  With respect to Dr. Asher's testimony, the ALJ found as follows:

> I have considered the opinion of Dr. Asher, but give it no weight in this decision.  Dr. Asher appears to have based his opinion primarily on the claimant's subjective complaints at the hearing.  His assessment is not supported by the objective medical evidence in the file.  The only treatment the claimant has ever received for her allegedly disabling depression and anxiety were antidepressant prescription refills from her primary care physicians.  She was not seeing any psychiatrist or psychologists, never underwent therapy or counseling and was never hospitalized due to mental impairments.  Further, at one point when referred to a psychological evaluation by Disability Determination Services she did not comply.  This evidence indicates that the claimant's depressive symptoms were well controlled with the use of medication and imposed at most moderate limitations on her functional abilities.  Although the claimant testified that she cannot afford to seek psychiatric treatment, there is no indication that she has ever sought support from a low income or free medical clinic, or tried any alternative therapies to relieve her pain.  Further, the claimant did receive state general assistance funds and medical coverage until the year 2003.  Therefore, she could have received psychiatric treatment if she so desired.

Tr. 25-26.

Plaintiff argues the ALJ erred by finding Dr. Asher based his opinion primarily on her subjective complaints.  She asserts Dr. Asher specifically indicated he rated her as markedly impaired in the above three functional areas on the reports of other medical sources in the record.  Dr. Asher, however, testified specifically that "given her reporting," she would be markedly in those three areas. Tr. 1032-33.  Also as noted above, Dr. Asher further testified that her reports "throughout the record" had to be qualified due to the documentation of her malingering. Tr. 1031.  Accordingly, the ALJ cannot be faulted for discounting Dr. Asher's opinion in part for this reason.  Indeed, the ALJ also provided several additional reasons as to why the evidence in the record did not support such marked mental functional limitations, none of which have been challenged by plaintiff.

B.  <u>Dr. Neims and Dr. Miller</u>

In late August 2001, Daniel M. Neims, Ph.D., completed a state agency physical evaluation form, in which he found plaintiff to be moderately to severely limited in a number of different mental functional areas, due to a personality disorder, chronic post traumatic stress disorder, and a somatization disorder. Tr.

REPORT AND RECOMMENDATION
Page - 5

463-64. Dr. Neims further found she would be so limited for a period of twelve months. Tr. 465. In late November 2001, plaintiff was evaluated by Linda Miller, D.O., who diagnosed her with major depressive disorder and a global assessment of functioning ("GAF") of 60. Tr. 538. With respect to plaintiff's ability to function, Dr. Miller found as follows:

> Claimant may have difficulty managing her own funds as, she does not seem to know basic math. Claimant can probably preform simple and repetitive tasks without special or additional supervision and accept instruction from supervisors. Due to the symptoms of her mental illness she may have difficulties performing detailed and complex tasks, interacting with coworkers and the public, performing work activities on a consistent basis, maintaining regular attendance in the workplace, completing a normal workday or workweek and dealing with the usual stress encountered in competitive work.

Id. Dr. Miller did feel, however, that her symptoms were treatable, and that they would "likely improve within the next 12 months," if she was "compliant with adequate mental health treatment." Id.

Plaintiff argues the ALJ erred in failing to explain why he did not adopt the many mental functional limitations found by Drs. Neims and Miller. The undersigned agrees. Although the ALJ did discuss why he felt plaintiff's depressive symptoms "imposed at most moderate limitations on her functional abilities," (Tr. 25-26), he provided no analysis regarding the opinions of Dr. Neims and Dr. Miller. Defendant argues the ALJ accommodated all of the limitations found by these medical sources by limiting plaintiff to simple, routine, repetitive work tasks and to limited contact with the public. Defendant's Brief, p. 14. Clearly, however, both Dr. Neims and Dr. Miller found plaintiff suffered from more than just these two limitations. As such, it is not at all clear that the ALJ actually considered their full opinions.

C.   Dr. Lysak

In mid-December 2001, William Lysak, Ph.D., completed a psychiatric review technique form, in which he found plaintiff to have moderate restrictions in her activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence or pace. Tr. 549. Dr. Lysak also completed a mental residual functional capacity assessment form at the same time. Tr. 553-55. In the "summary conclusions" section of that form, Dr. Lysak checked a number of boxes indicating that plaintiff had moderate limitations in several mental functional areas, and a marked limitation in one such area. Tr. 553-54. In the "functional capacity assessment" section of that form, Dr. Lysack stated that she could "maintain attention and concentration for" two hour periods, "relate and get along with a limited number of" other people (but would "be unable to deal extensively" with the general public), and "adapt to

REPORT AND RECOMMENDATION
Page - 6

changes in [a] competitive work environment performing non-complex tasks." Tr. 555.

Plaintiff argues the ALJ erred in ignoring and/or overlooking the many moderate mental functional limitations checked off in the "summary conclusions" section of the mental residual functional capacity assessment form. Defendant asserts the ALJ properly included in his assessment of plaintiff's residual functional capacity the statements Dr. Lysak made in the "functional capacity assessment" section of that form. Specifically, defendant asserts this latter section takes precedence over the "summary conclusions" section, arguing that "[r]equiring the ALJ to recite each box would not add any limitations" to plaintiff's residual functional capacity assessment. Defendant's Brief, p. 15.

It is true that the ALJ's assessment of plaintiff's residual functional capacity appears to mirror the findings contained in the "functional capacity assessment" section of the mental residual functional capacity assessment form completed by Dr. Lysak. It also is true that the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes, 881 F.2d at 755. Here, however, as with the opinions of Dr. Neims and Dr. Miller, the ALJ included no analysis of the mental functional limitations found by Dr. Lysak in his decision. That is, the Court in this case cannot draw any specific and legitimate inferences from the ALJ's decision on this issue, as it would be mere speculation, as plaintiff asserts, as to whether the ALJ in fact considered those limitations. As such, the undersigned also finds the ALJ erred in failing to properly evaluate Dr. Lysak's opinion.

D.  Dr. Quint

Plaintiff was examined by Dr. Howard Quint in early November 2001. He noted that she "gave a very poor effort for the entire physical exam," and was "very reluctant to follow" his directions "with minimal effort being exerted." Tr. 531. For example, "[h]er lack of willingness to do the exercises" Dr. Quint had her perform, "seemed out of proportion to the physical findings of observable pain." Tr. 531, 533-34. Dr. Quint also observed "[s]he was very conscience of me observing her walk and her walk" might have been "somewhat affected by this." Tr. 532. The majority of Dr. Quint's objective findings, furthermore, were fairly unremarkable. Tr. 531-33.

In terms of plaintiff's functional capacity, Dr. Quint concluded as follows:

> The number of hours the claimant can stand and walk in an eight-hour workday would be two hours limited by poor exercise tolerance and motivation. She should be able to sit for six hours with breaks. She requires no assistive devices. She could occasionally and frequently carry 10 pounds although limited by hand discomfort. The claimant has frequent postural limitations because of joint and back discomfort. She also has frequent

REPORT AND RECOMMENDATION
Page - 7

> manipulative limitations because of pain in her metacarpal phalangeal joints. The claimant has no environmental restrictions other than driving while on Percocet.

Tr. 534. With respect to Dr. Quint's opinion, the ALJ found as follows:

> I have considered the opinion of Dr. Quint, but cannot give it significant weight in this determination. The claimant's failure to exert herself and keep her body in a state of basic physical well being and conditioning are personal choices and not factors upon which I can find an individual disabled. Further, given her behavior during the examination it is more likely than not that she was not as restricted as Dr. Quint reported. Since the objective findings of Dr. Quint's examination were consistent with those described by Dr. [Regina] Bonnevie in June 2000, I conclude that the opinion of Dr. Bonnevie should be given greater weight in this evaluation.

Tr. 21.

Plaintiff argues that contrary to the ALJ's findings regarding her "personal choices," Dr. Quint did not state he was basing his opinion on those alleged choices. The undersigned agrees. It is true, as noted above, that Dr. Quint had issues with plaintiff's lack of effort. Nevertheless, also as noted above, he still opined that plaintiff would have significant standing, walking and postural limitations. The ALJ did not state why he was in a better position than Dr. Quint to discount plaintiff's objective medical findings and physical limitations based on plaintiff's observed lack of effort. That is, the ALJ failed to provide a proper explanation as to why Dr. Quint's functional assessment should not have been adopted, even though Dr. Quint was the one to personally observe plaintiff during the examination.

II.     The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-

REPORT AND RECOMMENDATION
Page - 8

related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

> The claimant has the residual functional capacity to perform a [sic] less than the full range of light work. The claimant retains the ability to lift and carry up to 10 pounds frequently and up to 20 pounds occasionally. She is able to sit, stand, and walk for about 6 hours in an 8 hour work day. Due to her degenerative arthritis, the claimant should avoid overhead reaching with the upper extremities and she cannot climb ladders, ropes or scaffolds. The claimant should avoid hazardous working conditions such as working at heights or around dangerous machinery and she can only perform occasional climbing of ramps and stairs. The claimant should only perform work that requires limited contact with the public, but she [sic] able to perform simple, routine, repetitive work tasks and deal appropriately with supervisors and coworkers.

Tr. 30. Plaintiff argues that in light of the ALJ's errors in evaluating the medical evidence in the record discussed above, the ALJ's assessment of her residual functional capacity was erroneous as well. The undersigned agrees. Plaintiff further argues the ALJ erred in not addressing her manipulative limitations with respect to that assessment as well. Again, the undersigned agrees.

The record does contain objective medical evidence indicating that plaintiff has such limitations. For example, while evidence from late April and early May 1996, reveal no manipulative limitations or problems with grip strength (Tr. 182, 276), "mild manipulative limitation regarding her ability to grasp effectively" was noted in late June 2000. Tr. 449. In early July 2000, plaintiff was felt to be limited with respect to gross manipulation and reaching in all directions, including overhead. Tr. 453. In early November 2001, Dr. Quint opined that plaintiff had "frequent manipulative limitations because of pain in her metacarpal phalangeal joints." Tr. 534. Defendant argues the ALJ both adequately considered and accomodated plaintiff's hand impairments in assessing her with the above residual functional capacity. Other than with respect to overhead reaching, however, nowhere in that assessment did the ALJ address or note the other limitations stemming therefrom. Further, the ALJ did not provide any analysis regarding the objective medical evidence in the record noted above concerning those limitations.

III.     Vocational Expert Testimony

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-

Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff argues the ALJ erred in not obtaining the testimony of a vocational expert at the second hearing, although, as noted above, one was present at the time. She asserts the ALJ also ignored and/or overlooked the Appeals Council's directive to obtain such testimony. Plaintiff further argues the ALJ's reliance on the jobs found by the vocational expert in the first hearing (Tr. 29-30, 999) were precluded by her manipulative limitations and by her restriction to light work and to simple, repetitive tasks. Defendant counters the ALJ did not need to obtain additional vocational expert testimony, because the ALJ assessed plaintiff with the same residual functional capacity in both of his decisions.

In light of the ALJ's errors in evaluating the medical evidence in the record and assessing plaintiff's residual functional capacity noted above, however, the undersigned finds the ALJ should have obtained the testimony of the vocational expert at the second hearing. That is, because the ALJ did so err, reliance on prior vocational expert testimony that was based on the same or a substantially similar residual functional capacity assessment was erroneous as well. Therefore, on remand, unless the Commissioner determines that a finding of disability or non-disability can be made on the Grids alone, supplemental testimony from a vocational expert shall be obtained.

IV.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Plaintiff argues this matter should be remanded for an award of benefits, because the ALJ erred in evaluating the opinions of Drs. Neims, Miller, Lysak and Quint.

It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met. Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." Bunnell, 336 F.3d at 1116.

Here, it is not clear the ALJ would be required to find plaintiff disabled based on the opinions of Drs. Neims, Miller, Lysak and Quint. For example, there is evidence in the record that plaintiff suffers at most from only moderate mental functional limitations, and that she is capable of at least some kind of work based on those limitations. Tr. 144-46, 155, 166-68, 177. Dr. Lysak himself found plaintiff to be markedly limited in only one mental functional area, and noted that despite her limitations, she would be able to work, as did Dr. Miller. Tr. 538, 549, 553-55. Although it may be that based on the severity of limitations found by Dr. Neims and Dr. Asher alone plaintiff could be found disabled, as discussed above, the ALJ properly discounted the testimony of Dr. Asher, and Dr. Neims' limitations were discounted "to a large extent" by

1  Dr. John Kooiker, the other medical expert who testified at the second hearing, due to plaintiff's credibility
2  issues. Tr. 990-91.
3      In addition, while Dr. Quint's assessment of plaintiff's residual functional capacity may have been
4  more restrictive than that found by the ALJ, it hardly establishes that plaintiff is incapable of all work,
5  particularly in light of the other objective medical evidence in the record concerning her physical residual
6  functional capacity. Finally, it should be noted, and indeed has been pointed out by plaintiff herself, that the
7  vocational expert testimony in this case has not addressed her limitations as established by improperly
8  discredited evidence. Bunnell, 336 F.3d at 1116. Thus, for these reasons, the undersigned rejects plaintiff's
9  contention that remand for an outright award of benefits is appropriate in this case. That is, because issues
10 remain with respect to plaintiff's residual functional capacity and her ability to perform other work existing
11 in significant numbers in the national economy, this matter should be remanded to the Commissioner for
12 further administrative proceedings.
13 V.    Plaintiff's Age at the Time of the ALJ's Second Decision
14     Plaintiff raises an additional issue in her reply brief that was not raised in her opening brief. In her
15 reply brief, plaintiff argues that because she was age 55 at the time the ALJ issued his second decision, she
16 should have been found disabled under 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.01, in light of her
17 age, education, past work experience, and residual functional capacity. Because plaintiff did not raise this
18 issue in her opening brief, and has provided no reason as to why she did not raise it earlier, the undersigned
19 declines to address it here. Nevertheless, on remand, the Commissioner also shall determine whether as of
20 her fifty-fifth birthday, plaintiff should be found disabled based on the Grids.

21                                    CONCLUSION
22     Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff
23 was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for
24 further administrative proceedings in accordance with the findings contained herein.
25     Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),
26 the parties shall have ten (10) days from service of this Report and Recommendation to file written
27 objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those
28 objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit

REPORT AND RECOMMENDATION
Page - 12

imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 2, 2006**, as noted in the caption.

DATED this 8th day of May, 2006.

Karen L. Strombom
United States Magistrate Judge